UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MICHELLE L. HOUSE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:17-cv-02109-SEB-TAB |
| | ) | |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | ) ) | |
| Defendant. | ) | |

## ORDER

Plaintiff Michelle House applied for disability insurance benefits ("DIB") and/or supplemental security income ("SSI") from the Social Security Administration ("SSA") on February 6, 2014, alleging a disability onset date of December 1, 2013. [Filing No. 25-3 at 13.] Her application was initially denied on March 20, 2014, [Filing No. 25-5 at 4], and upon reconsideration on June 18, 2014, [Filing No. 25-5 at 24]. The ALJ conducted a hearing on November 18, 2015, [Filing No. 25-3 at 30-70], resulting in a decision on December 1, 2015 that Ms. House was not entitled to receive DIB or SSI, [Filing No. 25-3 at 10]. The Appeals Council denied review on April 14, 2017. [Filing No. 25-3 at 2.] On June 19, 2017, Ms. House timely filed this action seeking judicial review of the denial of benefits, pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). [Filing No. 1.] For the reasons detailed below, the decision of the ALJ is REVERSED and the case REMANDED for action consistent with this order.

### I.
#### STANDARD OF REVIEW

"The Social Security Act authorizes payment of disability insurance benefits … to individuals with disabilities." *Barnhart v. Walton*, 535 U.S. 212, 214 (2002). "The statutory definition of 'disability' has two parts. First, it requires a certain kind of inability, namely, an

1

inability to engage in any substantial gainful activity. Second, it requires an impairment, namely, a physical or mental impairment, which provides reason for the inability. The statute adds that the impairment must be one that has lasted or can be expected to last … not less than 12 months." *Id*. at 217.

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must afford the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

The ALJ must apply the five-step inquiry in sequence set forth in 20 C.F.R. § 404.1520(a)(4)(i)-(v), to determine:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (citations omitted) (alterations in original).[1] "If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a

---

[1] In general, the legal standards applied in the determination of disability are the same regardless of whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, the citations in this opinion refer to the appropriate parallel provisions as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id*. The ALJ uses the RFC at Step Four to determine whether the claimant can perform her own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(iv), (v). The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner. *See Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id*. (citation omitted).

## II.
### BACKGROUND

Ms. House, Plaintiff herein, was 41 years of age at the time she applied for DIB and/or SSI. [Filing No. 25-6 at 2.] She has at least a high school education and previously worked as a customer service clerk, data entry clerk, and bank teller. [Filing No. 25-3 at 21.][2]

---

[2] Both parties provided a detailed description of Ms. House's medical history and treatment in their briefs. [Filing No. 30; Filing No. 35.] Because that discussion implicates sensitive and otherwise

3

The ALJ followed the five-step sequential evaluation set forth by the Social Security Administration in 20 C.F.R. § 404.1520(a)(4) and ultimately concluded that Ms. House is not disabled. [Filing No. 25-3 at 23.] The ALJ found as follows:

- At Step One, the ALJ found that Ms. House has not engaged in substantial gainful activity[3] since December 1, 2013, the alleged onset date. [Filing No. 25-3 at 15.]

- At Step Two, the ALJ found that Ms. House has the following severe impairments: "obesity, residuals of Hodgkin's lymphoma cancer with chemotherapy and radiation treatment, asthma, and bipolar disorder." [Filing No. 25-3 at 15 (citations omitted).]

- At Step Three, the ALJ found that Ms. House does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. [Filing No. 25-3 at 17.]

- After Step Three but before Step Four, the ALJ found that Ms. House has the RFC "to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except no exposure to unprotected heights or dangerous machinery, occasional exposure to fumes, odors, dusts, gases, or poor ventilation; occasional exposure to extremes of cold or heat; occasional exposure to humidity and wetness; perform simple, unskilled work; away from the public; and occasional interaction with supervisors or co- workers." [Filing No. 25-3 at 19.]

- At Step Four, the ALJ concluded, after considering Ms. House's age, education, work experience, and RFC and relying on the testimony of the vocational expert ("VE"), that Ms. House is incapable of performing her past relevant work as a customer service clerk, data entry clerk, and bank teller. [Filing No. 25-3 at 21.]

- At Step Five of the analysis, relying on VE testimony considering Ms. House's age, education, and RFC, the ALJ found there were jobs that existed in significant numbers in the national economy that Ms. House could have performed through the date of the decision. [Filing No. 25-3 at 22.]

---

confidential medical information concerning Ms. House, we will simply incorporate those facts by reference and detail specific facts only as necessary to address the parties' arguments.

[3] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a).

# III.
## DISCUSSION

Ms. House advances two claims of error regarding the ALJ's decision that we will consider in reverse order.

**A. The ALJ failed to give good reasons for discounting the opinion of a treating physician.**

Ms. House contends that ALJ failed to properly evaluate an opinion co-signed by her treating therapist, Jennifer Sorg, N.P., and Gina Laite, M.D.[4] [Filing No. 30 at 26 (citing Filing No. 25-17 at 42-46).]

The Commissioner contends that the ALJ reasonably considered the opinion and supported his decision to give the statement only partial weight based on the evidence as a whole, including "normal mental status examination findings and good response to treatment with medication and therapy that Plaintiff had demonstrated in her medical records." [Filing No. 35 at 11 (citing Filing No. 25-12 at 39-62).]

Ms. House's argument invokes the treating physician rule. In *Scott,* the Court described that a "treating doctor's opinion receives controlling weight if it is 'well-supported' and 'not inconsistent with the other substantial evidence' in the record." *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011) (citing *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011); *Campbell v. Astrue*,

---

[4] We are not clear as to the exact relationship between Dr. Laite and Ms. House. The record does demonstrate that Ms. Sorg had a treating, examining relationship with Ms. House. [Filing No. 25-12 at 5-38.] Perhaps Dr. Laite was a supervising physician over Ms. Sorg? All that the record appears to show is that Dr. Laite concurred with the opinion given at Exhibit 14F. [Filing No. 25-17 at 46.] The governing regulations make certain distinctions as to "acceptable medical sources," pursuant to which Dr. Laite qualifies, but not Ms. Sorg. 20 C.F.R. § 404.1502. The regulations also distinguish between the presence or absence of an examining or treating relationship. 20 C.F.R. § 404.1527. However, neither party in this suit, nor the ALJ in his decision made any substantive distinctions based on the exact nature of the relationship or the professional qualifications of the source. So for purposes of clarity and simplicity in this order, we will simply refer to the opinion at Exhibit 14F as attributable to Dr. Laite.

627 F.3d 299, 306 (7th Cir. 2010)). "An ALJ must offer 'good reasons' for discounting the opinion of a treating physician." *Id.* (citing *Martinez v. Astrue*, 630 F.3d 693, 698 (7th Cir. 2011); *Campbell*, 627 F.3d at 306). "And even if there had been sound reasons for refusing to give [a treating physician's] assessment controlling weight, the ALJ still would have been required to determine what value the assessment did merit." *Id.* at 740 (citing *Larson v. Astrue,* 615 F.3d 744, 751 (7th Cir. 2010)). "If an ALJ does not give a treating physician's opinion controlling weight, the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Id.* (citing *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009); 20 C.F.R. § 404.1527(c)).

> The ALJ offers only as follows:
>
> The joint opinion statement from Jennifer Sorg NP and Gina Laite MD regarding the claimant's mental functioning (Ex. 14F at 2-6) has been considered and is given partial weight to the extent it is consistent with the evidence overall. The limitations used by the provider differ from the functional limitation levels used by the Social Security Administration in determining disability. However, functional abilities identified by the provider as "no useful ability to function" are determined too restrictive, given the evidence as a whole.

[Filing No. 25-3 at 21.] SSA does not restrict acceptable medical source statements to any particular form, beyond reserving to the Commissioner opinions on issues dispositive of the ultimate administrative legal findings. 20 C.F.R. § 404.1527(d)(1)-(3) (compared with 20 C.F.R. § 404.1527(b) ("In determining whether you are disabled, we will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive.")). Beyond that distinction which is meaningless to the analysis of Dr. Laite's opinion, the ALJ's discussion offers nothing more than conclusions with no attempt to articulate how the evidence supports

6

portions of the opinion given weight or conflicts with the functional abilities deemed too restrictive.

The Commissioner correctly points out that the Seventh Circuit requires that we read the decision as a whole, rather than demand tidy packaging with redundant analyses. [Filing No. 35 at 11 (*See Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004) ("it is proper to read the ALJ's decision as a whole, and . . . it would be a needless formality to have the ALJ repeat substantially similar factual analyses")).] However, the ALJ's decision offers very little analysis even when taken as a whole. We find relatively little discussion relevant to the mental health opinion, which taken collectively fails to provide a logical bridge between the evidence and conclusions. *Young v. Barnhart,* 362 F.3d 995, 1002 (7th Cir.2004) (ALJ is required to provide an "accurate and logical bridge" between the evidence and the conclusion that the claimant is not disabled, so that "as a reviewing court, we may assess the validity of the agency's ultimate findings and afford [the] claimant meaningful judicial review."). In an earlier portion of the decision discussing the impairments the ALJ found severe, he offers three paragraphs devoted to Ms. House's mental health impairment(s):

> Treating records from the claimant's primary care physician, demonstrate that she has been maintained on medication for her symptoms associated with anxiety disorder and mood disorder (Ex. 10F at 5) since at least April 2014 (Id. at 62) with a brief stint of individual therapy (Ex. 10F throughout). Her individual therapy sessions focused on mood monitoring and treatment of her bipolar disorder, though after the passing of her father, her sessions primarily centered on grief (Id.).
>
> In January 2015, the claimant's therapist noted she had done well on a combination of medications in the past, though she had discontinued the same in 2013 and when re-started on just one medication she had to discontinue this due to nausea. As of January 2015, the claimant was re-started on a medication with a plan to combat the side effect of nausea (Ex. 10F at 38 and 39).
>
> Mental Status examinations in the record consistently documented the claimant is cooperative, had intact memory, logical thought process, intact judgment and insight, and appropriate thought content. Findings regarding her mood and affect

7

have varied and are identified as congruent, tearful, dysphoric, and mildly anxious (Ex. 10F).

[Filing No. 25-3 at 17.] Beyond that, there a couple of scant references that Ms. House's medication helped, "but she did not enjoy socialization and had difficulty with anger" and that environmental limitations were added due to her medications for mental health causing sedation "creating slowed functioning." [Filing No. 25-3 at 20.]

This is not a case where the ALJ was relying on the opinion of any expert. The ALJ gave little weight to the state agency psychiatric consultants that opined only mild functional limitations based on the ALJ's review of the updated medical evidence. [Filing No. 25-3 at 21.] "We have made clear, however, that ALJs are not qualified to evaluate medical records themselves, but must rely on expert opinions." *Moreno v. Berryhill*, 882 F.3d 722, 729 (7th Cir. 2018) (citing *Meuser v. Colvin*, 838 F.3d 905, 911 (7th Cir. 2016) (remanding because the ALJ improperly "played doctor"); *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014) (prohibiting ALJs from "playing doctor" by summarizing the results of a medical exam without input from an expert)). The concern with the ALJ relying on his own assessment of the medical evidence is borne out in this case, where the evidence the ALJ cites does not really conflict with the nature of the functional limitations attributable to Ms. House's severe impairment, bipolar disorder. "A person suffering from bipolar disorder has violent mood swings, the extremes of which are mania—a state of excitement in which [she] loses contact with reality and exhibits bizarre behavior—and clinical depression, in which [she] has great difficulty sleeping or concentrating." *Bauer v. Astrue*, 532 F.3d 606, 607 (7th Cir. 2008). "A person who suffers from a mental illness will have better days and worse days, so a snapshot of any single moment says little about her overall condition." *Punzio,* 630 F.3d at 710. The ALJ "thought the medical witnesses had contradicted themselves when they said the plaintiff's mental illness was severe yet observed that she was behaving pretty

8

normally during her office visits. There was no contradiction; bipolar disorder is episodic." *Kangail v. Barnhart,* 454 F.3d 627, 629 (7th Cir. 2006). Bipolar disorder "responds erratically to treatment." *Bauer*, 532 F.3d at 609. "ALJs assessing claimants with bipolar disorder must consider possible alternative explanations before concluding that non-compliance with medications supports an adverse credibility inference." *Jelinek v. Astrue,* 662 F.3d 805, 814 (7th Cir.2014). The evidence the ALJ does offer showing some normal mental status examinations with admittedly varied mood and a history of discontinuing medications does not appear atypical for someone with possibly disabling bipolar disorder.

More importantly, that same evidence does not supply *good reasons* for discounting the opinion of Dr. Laite's opinion, in particular. This is also not a case where the claimant's treating physician rendered a wholly unbelievable opinion in an effort to support their patient, which opines limitations wildly inconsistent with the medical evidence. The opinion provided a prognosis that Ms. House was "unlikely to recover fully; working to stabilize depression, anxiety but likely to continue to have breakthrough symptoms." [Filing No. 25-17 at 42.] The vast majority of the mental abilities and aptitudes that were rated were either unlimited, satisfactory, or not precluded. [Filing No. 25-17 at 44-45.] The only notable exceptions where Ms. House was rated as unable to meet competitive standards were performing at an adequate pace, dealing with even normal stress, and maintaining attendance. [Filing No. 25-17 at 44-46.] The ALJ's discussion of the mental health evidence, acknowledging variant mood, sedation, and anger does not provide a logical basis to discount the specific areas identified as problematic to employment. The ALJ is required to provide that logical bridge. Accordingly, we cannot find that the ALJ has adequately explained how the opinion of Dr. Laite was discredited. The issue requires remand for further consideration of the opinion.

**B. We decline to reach Ms. House's remaining claim of error.**

Ms. House also contends that the ALJ ignored the "opinion" of Dr. Sullivan. [Filing No. 30 at 29.] Having found that Ms. House's other claim of error supports remand, we need not decide this particular claim to resolve this suit and decline to do so here. Ms. House identifies the findings of a cardiopulmonary stress test report summarized by Dr. Sullivan to constitute a "medical opinion" and thus triggering specific considerations and standards imposed by regulation and precedent on the ALJ in his decision. The test findings indicate that Ms. House had "severely limited aerobic capacity" and "likely [had] … a very low anaerobic threshold." [Filing No. 25-14 at 2.] We agree with the Commissioner that the test findings strain the regulatory definition of a "medical opinion." [Filing No. 35 at 10 (citing *Books v. Chater,* 91 F.3d 972, 978 (7th Cir. 1996)); *see also* 20 C.F.R. § 404.1527(a)(1) ("Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairments(s) and your physical or mental restrictions.").] However, Seventh Circuit precedent has implicitly given wide latitude to what qualifies as a medical opinion without providing explicit contours as to the precise limits; taken to an extreme, almost any clinical finding or test result would need to be identified by the ALJ and weighed, giving good reasons for its rejection. Regulatory changes that do not apply to this claim, based on its filing date, provide additional clarification as to what qualifies as a medical opinion. 20 C.F.R. § 404.1513(a)(2). However, the discussion is somewhat beside the point here.

There are better arguments that apply to the evidence that Ms. House has not raised, but we offer a limited discussion of in order to provide additional guidance on remand. For one, the ALJ is again relying on his own lay assessment of the medical evidence. The ALJ rejected the state agency medical consultants' opinions that also found Ms. House's physical impairments to

not be severe. [Filing No. 25-3 at 21.] We agree that updated evidence suggests severe impairments. However, we are not able to determine precisely how the ALJ arrived at the conclusion that Ms. House would be capable of medium work. Even the ALJ's summary of the updated medical evidence, including Dr. Sullivan's findings, suggest that Ms. House has a complicated pulmonary condition as a residual from her cancer treatment that appears to conflict with medium work, particularly beginning in 2015. Though we recognize there are some inconsistencies with the record. Ms. House additionally presents some evidence in this suit that severe narrowing of an upper basilar artery could be the likely cause of her migraine complaints. [Filing No. 30 at 11.] Ms. House devotes considerable attention to her migraine complaints in her brief and then does not provide any corresponding argument whatsoever in connection with those facts. However, the ALJ's decision is even more perplexing, only mentioning complaints of migraines without any discussion of the medical evidence or his conclusions in connection with them.

We are aware that Ms. House has a heavy burden to demonstrate complete disability as a younger individual. However, given the nature of her pulmonary problems and updated evidence that has rendered the expert consultants' opinions inconsistent with the record as a whole, it may be wise to get further expert guidance as to the true limiting effects of her conditions.

## IV.
### CONCLUSION

For the reasons detailed herein, the Court **REVERSES** the ALJ's decision denying Ms. House's benefits and **REMANDS** this matter for further proceedings pursuant to 42 U.S.C.§ 405(g) (sentence 4) as detailed above. Final Judgment will issue accordingly.

Date: 3/30/2018

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Timothy E. Burns
KELLER & KELLER
timb@2keller.com

Jill Z. Julian
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
jill.julian@usdoj.gov

Matthew Frederick Richter
KELLER & KELLER LLP
mrichter@2keller.com

Joseph R. Wambach
KELLER & KELLER
joew@2keller.com